**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KENNETH W. K., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 17-cv-827-JPG-CJP |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

In accordance with 42 U.S.C. § 405(g), plaintiff Kenneth W. K., represented by counsel, seeks review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for disability benefits in January 2016, alleging disability beginning on November 14, 2015. After holding an evidentiary hearing, ALJ Raymond L. Souza denied the application on February 17, 2017. (Tr. 15-28.) The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final agency decision subject to judicial review. (Tr. 1.) Plaintiff has exhausted administrative remedies and has filed a timely complaint in this Court.

**Plaintiff's Arguments**

Plaintiff makes the following arguments:

1. The ALJ's finding that plaintiff had engaged in substantial gainful activity in the fourth quarter of 2015 was erroneous.

2. The ALJ did not properly evaluate the opinions of treating psychiatrist Jeffrey Chalfant, counselor Justine Livesay, and state agency reviewer David Biscardi.

3. The ALJ did not properly assess the reliability of his statements concerning the

1

intensity, persistence and limiting effects of his symptoms.

## **Legal Standards**

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but the impairment is neither listed in nor equivalent to the impairments in the regulations—failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work

experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id*.; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## **The Decision of the ALJ**

ALJ Souza followed the five-step analytical framework described above. He determined that plaintiff had engaged in substantial gainful activity in the fourth quarter of 2015, but not thereafter, and he is insured for DIB through December 31, 2020.

The ALJ found that plaintiff had severe impairments of post-traumatic stress disorder, depression, and anxiety, and that these impairments do not meet or equal a listed impairment.

ALJ Souza concluded that plaintiff had the residual functional capacity to perform work at the medium exertional level with the following limitations:

> [H]e should avoid using hazardous machinery. He is also able to remember, understand, and carry out simple and routine instructions and tasks consistent with

SVP levels 1 and 2 type jobs with only occasional decision making required and occasional changes in the work setting. There should also be no strict production quotas with emphasis on a per shift rather than per hour basis. Additionally the claimant should have only occasional interaction with the general public, co-workers, and supervisors.

Based on evidence from a vocational expert (VE), the ALJ determined that plaintiff could not do his past work, but he could perform other jobs which exist in significant numbers in the national and local economies, and, therefore, he was not disabled.

### **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

**1.     Agency Forms**

Plaintiff was born in 1961 and was 54 years old on the alleged date of disability. (Tr. 193.) He said that his disabling conditions included depression, anxiety, insomnia, paranoia, and severe insecurity. He stopped working on November 14, 2015. He had worked as a forklift operator and, before that, as a route salesman for Hostess Brands. (Tr. 189-190.)

On November 14, 2015, plaintiff and his wife were home when a man invaded their home, pistol-whipped and tied up plaintiff, and raped plaintiff's wife in front of him. Plaintiff said that he was severely traumatized by these events. They were forced to leave their home and possessions, and were living with relatives. He was experiencing severe stress, anxiety and depression. He was unable to sleep and was very paranoid and cautious about being out in public. He could not focus or function in a workplace. (Tr. 195.)

**2.     Evidentiary Hearing**

Plaintiff was represented by counsel at the hearing in January 2017. (Tr. 35.)

Plaintiff testified that the man who assaulted them was married to his wife's sister. They had helped their adult son move that day, and they were watching their two young grandchildren in their home. Plaintiff was outside doing yardwork when the assailant entered the house. The assailant locked the children in a bedroom and took plaintiff and his wife into another bedroom where he assaulted them and tied them up. He forced plaintiff to watch while he raped plaintiff's wife. The ordeal ended only when their son came to the house to pick up his children. Plaintiff was able to yell to him to run and get help. The assailant ran after the son and died on their front porch. Since then, plaintiff had severe anxiety, depression, "a lot of guilt," and flashbacks several times a day. Every day was "a struggle." He had angry thoughts, suicidal thoughts, and constant fear that something bad was going to happen. He had "major issues" with going out in public. He had trouble sleeping because of thoughts going through his mind. He had trouble focusing. It felt like his mind was "overwhelmed." (Tr. 39-42.)

Plaintiff's doctor recommended that he attend an intensive outpatient treatment program, but his insurance would not cover it. (Tr. 41.)

A vocational expert (VE) also testified. The ALJ asked her a hypothetical question which corresponded to the RFC assessment. The VE responded that this person could not do plaintiff's past work, but he could do other jobs such as laundry worker, dishwasher, and industrial cleaner. However, if he were off-task for at least fifteen percent of the work day, he would not be employable. In addition, if the person were limited to no interaction with the general public or co-workers, and only minimal interaction with supervisors, there would be no jobs that he could do. (Tr. 47-48.)

### 3. Medical Records

A laceration in plaintiff's scalp was sutured in the emergency room on the date of the

assault. (Tr. 287-288.)

Plaintiff was seen by his primary care provider, a nurse practitioner, on December 2, 2015. He told her about the home invasion and reported that he had been very anxious since then. He was not sleeping well and was not able to concentrate. He had not been back to work. He was taking Xanax. She diagnosed anxiety disorder. (Tr. 308.)

Plaintiff attended counselling sessions in December 2015 and January 2016 at Call for Help, Inc. (Tr. 330-340.)

Plaintiff began seeing counselor Justine Livesay at Psychiatric Services of Southern Illinois on February 1, 2016. He reported depression, anxiety, and PTSD symptoms. He continued to see Ms. Livesay regularly throughout 2016. He reported that he thought about the home invasion every day; he felt guilty; he felt broken; he could not focus or concentrate. He had a constant fear that something bad was going to happen. She diagnosed major depressive disorder, post-traumatic stress disorder, and anxiety disorder. She regularly described his mood as depressed or depressed and stressed, and his affect as flat, blunted, or flat and anxious. (Tr. 321-327, 365-366, 371-374, 378-379, 386-391, 395-396, 403-406, 410-411, 418-421.) The last note is dated November 23, 2016. Plaintiff reported that "he can't look at his wife without seeing what happened." (Tr. 420.)

Plaintiff began seeing Dr. Chalfant at Psychiatric Services of Southern Illinois on February 25, 2016. Dr. Chalfant is a Board Certified Adult Psychiatrist. (Tr. 370.) He saw the doctor eleven times between February and December 2016. Dr. Chalfant diagnosed major depressive disorder, recurrent, severe, without psychotic features, and post-traumatic stress disorder unspecified. On exam, he consistently described plaintiff's mood as "not too good" and his affect as constricted. His flow of thought was logical and sequential and he had no psychosis. Dr.

Chalfant prescribed a number of drugs, including Zoloft, Seroquel (to help with nightmares), Prazosin, Xanax, Hydroxyzine, and Abilify. (Tr. 367-370, 375-377, 380-385, 392-394, 397-402, 407-409, 412-417, 422-424.)

Despite taking these medications, plaintiff reported to Dr. Chalfant that he had continuing symptoms of nightmares, depression, inability to concentrate, flashbacks, anxiety, and anxiety being in public. (*See, e.g.,* Tr. 375, 380, 383, 392, 412, 425.) In March 2016, Dr. Chalfant noted that, if plaintiff continued to have problems, he may recommend an intensive outpatient program. (Tr. 377.) In July, he stated that he would talk to Ms. Livesay about plaintiff going to partial hospitalization. At the next visit, Dr. Chalfant noted that plaintiff had looked into the recommended intensive outpatient program but he was unable to afford it; he was hoping to receive some money from an Illinois Victims' Fund to pay for that treatment. Dr. Chalfant recommended that he go to intensive outpatient hospitalization as soon as he was able. (Tr. 399-402.) In November, plaintiff had been unable to fill the prescription for Abilify because of insurance issues. Dr. Chalfant noted that he was still off work "due to severe concentration and focus issues." (Tr. 415-417.) At the last visit on December 8, 2016, plaintiff continued to have anxiety and depression, and could not get the home invasion incident out of his mind. He was "currently not working due to problems related since the incident." Dr. Chalfant wrote, "I continue to feel that he needs an intensive outpatient program or a program that specializes in PTSD. At this point I do not feel medication changes would make any difference unless he could try Abilify." He was to return in one month. (Tr. 422-424.)

Harry Deppe, Ph.D., performed a consultative psychological exam in March 2016. He spent about 43 minutes with plaintiff. He did not review any records from Dr. Chalfant or Ms. Livesay. He diagnosed PTSD and concluded that plaintiff had intact the ability to relate to others

7

and a fair ability to understand and follow simple instructions, to maintain attention required to perform simple, repetitive tasks, and to withstand the stress and pressures of day-to-day work. (Tr. 347-340.)

### 4. Opinions of Dr. Chalfant and Ms. Livesay

In December 2016, Dr. Chalfant assessed plaintiff's mental functional capacity by completing two forms. He stated that plaintiff reported "severe problems functioning despite medications and therapy." He said that plaintiff's prognosis was guarded and that he (Dr. Chalfant) did not feel that plaintiff could currently hold gainful employment. He said that plaintiff had marked limitations in a number of areas, including ability to maintain a work schedule, ability to maintain adequate attention, concentration, and focus on work duties, ability to interact appropriately with the general public, and ability to respond appropriately to routine work related stressors. (Tr. 426-427.)

Ms. Livesay completed the same forms in December 2016. She explained that plaintiff was depressed, experienced PTSD symptoms and anxiety, and had difficulty with concentration and focus. She opined that he would not be able to function in a work environment. She also assessed marked limitations in a number of areas, including ability to maintain adequate attention, concentration, and focus on work duties, and ability to respond appropriately to routine work related stressors. (Tr. 431-432.)

### 5. Opinions of State Agency Consultants

In April 2016, state agency consultant Joseph Mehr, Ph.D., assessed plaintiff's mental RFC based on a review of the file. He concluded that plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods. (Tr. 59-60.) A second state agency consultant reviewed the file in August 2016, and concluded that plaintiff had moderate difficulties

in maintaining social functioning and in maintaining concentration, persistence or pace. (Tr. 71-72.)

## **Analysis**

The Court turns first to plaintiff's challenge to the ALJ's credibility findings. Plaintiff argues that the ALJ ignored some of the medical evidence and did not give good reasons grounded in the evidence for his adverse credibility determination.

The credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

The ALJ did not cite to SSR 16-3p, which supersedes the previous SSR on assessing a claimant's credibility.[1] SSR 16-3p can be found at 2016 WL 1119029. SSR 16-3p became effective on March 28, 2016. *See* 2016 WL 1237954, setting forth the effective date. SSR 16-3p points out that the regulations do not use the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." 2016WL1119029, at *1. SSR 16-3p continues to require the ALJ to consider the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529.

The ALJ is required to give "specific reasons" for his credibility findings. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). It is not enough just to describe the plaintiff's

---

[1] SSR 16-3p supersedes SSR 96-7p, also not cited by the ALJ. Instead, he cited to SSR 96-4p (Tr. 21), which is not relevant to the credibility determination.

testimony; the ALJ must analyze the evidence. *Ibid*. *See also Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (The ALJ "must justify the credibility finding with specific reasons supported by the record.") If the adverse credibility finding is premised on inconsistencies between plaintiff's statements and other evidence in the record, the ALJ must identify and explain those inconsistencies. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Here, the reasons given by the ALJ for rejecting plaintiff's statements are not supported by the record and are not valid. ALJ Souza said that plaintiff's treatment "has been conservative in nature and not the type one would expect from a disabling condition." He said that the record did not contain any significant abnormal findings on examinations, and noted there was no evidence of side effects from medications. He also observed that plaintiff was able to participate in the hearing and in the consultative exam without being distracted. He concluded that plaintiff's "testimony is not fully consistent with his treatment records and appears evasive and exaggerated." (Tr. 24-25.)

The ALJ gave no example of evasion or exaggeration on plaintiff's part. The Court has carefully reviewed the transcript of the evidentiary hearing, and is unable to discern what lead the ALJ to describe plaintiff's testimony as evasive and exaggerated.

As plaintiff points out, the ALJ was incorrect in his initial finding that plaintiff worked at the level of substantial gainful activity in the fourth quarter of 2015. Plaintiff did have income in that quarter, but it was income from short term disability insurance. (*See* Tr. 178.) There is absolutely no evidence that plaintiff returned to work after the home invasion. Defendant argues that there is no indication that the ALJ's mistake factored into his credibility determination. However, since the ALJ gave no explanation for his characterization of plaintiff's testimony, it is anyone's guess whether his mistaken belief that plaintiff had actually returned to work influenced

his perception of plaintiff's testimony.

The ALJ's perception that plaintiff's treatment was "conservative" and "not the type one would expect from a disabling condition" does not support his adverse credibility finding. First, he ignored completely Dr. Chalfant's repeated recommendation that plaintiff be treated in an intensive outpatient program or a program specializing in PTSD. Plaintiff was unable to follow this recommendation because he could not afford it. Further, Dr. Chalfant doubted that medication changes would help plaintiff if he could not try Abilify, which his insurance would not cover. The ALJ erred in ignoring plaintiff's inability to afford the recommended treatment. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). In addition, there is nothing in the record to support the ALJ's perception that plaintiff's course of treatment was "not the type one would expect from a disabling condition." That is a medical conclusion that the ALJ was not competent to make. *Voigt v. Colvin*, 781 F.3d 871, 877 (7th Cir. 2015). For the same reason, the ALJ's conclusion that the medical examinations did not show mental or cognitive impairments that would preclude employment is also error. No medical expert reached that conclusion. In fact, Dr. Chalfant and Ms. Livesay reached the opposite conclusion, and even the state agency consultants concluded that plaintiff has moderate difficulty in maintaining concentration, persistence or pace.

The ALJ's statement about side effects is factually incorrect. Dr. Chalfant changed his medication in March 2016 because Seroquel made him lightheaded. (Tr. 375.)

The erroneous credibility determination requires remand. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

The Court also agrees that the ALJ erred in his consideration of the opinions of Dr. Chalfant and Ms. Livesay.[2] He discounted both opinions because they were "based solely" on plaintiff's subjective complaints. (Tr. 25.) That is not a valid criticism, as "psychiatric assessments normally are based primarily on what the patient tells the psychiatrist, so that if the judge were correct, most psychiatric evidence would be totally excluded from social security disability proceedings —a position we rejected in *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015)." *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). The ALJ also criticized the opinions as "conclusory with little explanation," but both providers answered all of the questions on the forms presented to them, and the Mental RFC Assessment was simply a checkbox form which did not ask for any explanation. The ALJ also said that the opinions were inconsistent with the medical records, but, again, the ALJ ignored a significant part of the medical records, the recommendation that plaintiff be placed in an intensive outpatient treatment program. This selective review of the records was error. *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018). Lastly, the ALJ erred in overlooking the fact that Dr. Chalfant's opinion was consistent with Ms. Livesay's. Although Ms. Livesay is not an "acceptable medical source," her opinions must be considered on the severity of plaintiff's impairments, and the consistency of the two opinions must be considered in weighing Dr. Chalfant's opinion. *Ibid.*

The ALJ's errors require remand. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

---

[2] The ALJ incorrectly refers to Justine Livesay as a man (Tr. 25), which might lead one to question how carefully he reviewed the record.

## Conclusion

The Commissioner's final decision denying Kenneth W. K.'s application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED: MAY 21, 2018**

> *s/ J. Phil Gilbert*
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**